IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| vs. | No. 3:23-mj-00032-KFR |
| HARRY MATHEWS, | |
| Defendant. | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Katie Yarborough, having been first duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I have been a Special Agent with the FBI for approximately seven years. I am currently assigned to the White Collar Crimes squad in the FBI Anchorage Field Office. During my seven years with the FBI, I have led and participated in many investigations involving violent crimes, threats, robbery, fraud, and drugs. I also investigate violations of federal law occurring in the Special Aircraft Jurisdiction of the United States.

2. I make this affidavit in support of an application for a criminal complaint and arrest warrant against HARRY MATHEWS pursuant to Federal Rules of Criminal Procedure 3 and 4. As explained more fully below, I have probable cause to believe that Harry Mathews has committed violations of 49 U.S.C. § 46504 (Interference with Flight Crew Members and Attendants), 49 U.S.C. § 46506(1) (Application of Certain Criminal Laws to Acts on

Aircraft), and 18 U.S.C. § 113(a)(5) (Simple Assault within Maritime and Territorial Jurisdiction). The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Because the affidavit is intended to establish probable cause to support a complaint and secure an arrest warrant, I have not included each and every fact known to me concerning this investigation.

## RELEVANT STATUTES AND REGULATIONS

3. Title 49, United States Code, Section 46504 (Interference with Flight Crew Members and Attendants) provides in pertinent part:

   a. "An individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under title 18, imprisoned for not more than 20 years, or both."

4. Title 49, United States Code, Section 46506(1) (Application of Certain Criminal Laws to Acts on Aircraft), provides:

   a. "An individual on an aircraft in the special aircraft jurisdiction of the United States who commits an act that – (1) if committed in the special maritime and territorial jurisdiction of the United States (as defined in section 7 of title 18) would violate section 113, 114, 661, 662, 1111, 1112, 1113, or 2111 or chapter 109A of

title 18, shall be fined under title 18, imprisoned under that section or chapter, or both[.]"

5. Title 18, United States Code, Section 113(a)(5) (Simple Assault within Maritime and Territorial Jurisdiction), provides:

   a. "Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows: (5) Simple assault, by a fine under this title or imprisonment for not more than six months, or both, or if the victim of the assault is an individual who has not attained the age of 16 years, by fine under this title or imprisonment for not more than 1 year, or both."

## FACTS ESTABLISHING PROBABLE CAUSE

6. At approximately 4:09 p.m. on Sunday, January 18, 2026, I received an email containing an FAA Incident Notification regarding Delta Flight 121 from Minneapolis to Tokyo, Japan. The notification indicated that the flight crew reported an unruly passenger and declared a Level 2 Disturbance, diverting the plane to land in Anchorage.

7. At approximately 5:23 p.m., I received a second email containing another FAA Incident Notification containing additional information. This second email indicated that a disruptive passenger was walking around the aisle of the aircraft, attempted to open a cabin door, and had become verbally abusive towards the flight crew as they attempted to help him back to his seat.

8. I responded to the Ted Stevens Anchorage International Airport and arrived around the same time as the plane landed. Officers with the Anchorage Airport Police Department

immediately boarded the plane and handcuffed and removed the suspect, identified as HARRY MATHEWS, 64. A medic assessed MATHEWS as having an altered mental status, with vitals that were not within the normal range. The medic indicated that MATHEWS could safely remain at the airport for an interview. In an abundance of caution, I directed airport police to transport MATHEWS to Providence Medical Center without waiting to interview him.

9. I interviewed several of the flight crew. One of the flight attendants stated that when MATHEWS boarded the plane in Minneapolis, he was stumbling, unable to find his seat, and was not speaking coherently. She suspected that MATHEWS was drunk and wanted to address it immediately to get him off the plane. She asked a second flight attendant to go back to MATHEWS's seat and check on him, including by smelling his breath.

10. The second flight attendant stated that she went back to MATHEWS's seat in Row 49 to speak with him prior to takeoff. She indicated that MATHEWS seemed to have a hard time focusing on answers to her questions, but that he was able to tell her that he flew from Knoxville, Tennessee to Minneapolis earlier that day, and was bound for Japan, where he lived. She suspected that he was having symptoms of dementia due to his age.

11. Passengers near where MATHEWS was seated in Row 49 described him as staggering, incoherent, unable to sit upright in his seat, and periodically getting up and moving about the cabin, including when the seatbelt sign was on. Throughout the flight, the flight crew gave MATHEWS multiple instructions not to get up from his seat, which he ignored. Members of the flight crew described MATHEWS as periodically falling

asleep, then suddenly jolting awake and becoming aggressive and advancing toward Cabin Door 2. They indicated that they believed he was under the influence of an unknown controlled substance.

12. At one point, one of the pilots left the cockpit to come back to the cabin and speak with MATHEWS. MATHEWS told the pilot that he took some sleeping medications prior to boarding the flight. Another flight attendant that I interviewed, however, stated that MATHEWS denied taking any pills prior to takeoff.

13. Victim 1 was one of the flight attendants. She stated that MATHEWS became aggressive with her during the flight. At one point, he got up from his seat, stepped over the armrest, and used his right arm to forcibly push her all the way from Row 49 to the rear of the cabin where the restrooms were located. At that point, two male attendants came to the rear of the cabin to help Victim 1. When one of the male flight attendants put their hands on MATTHEWS's shoulders to get him away from Victim 1, MATHEWS yelled that he was going to sue them. They were able to escort him back to his seat.

14. Sometime later, MATHEWS got up from his seat again, crossed over several passengers to get from the right-side aisle to the left-side aisle, and began walking towards the first-class section in the front of the plane. At that point, flight attendants brought him back to his seat again and used their beverage carts to block the aisle so that he could not get up again and move toward the cabin door. At least four official or off-duty personnel, including a retired federal air marshal, sat near MATHEWS to prevent him from getting up again. They elected not to utilize flex-cuffs to restrain him further.

*United States v. Harry Mathews*
Affidavit in Support of Criminal Complaint

15. One of the flight attendants described MATHEWS as saying that the plane was going to crash. She was visibly upset during the interview.

16. The members of the flight crew that I interviewed confirmed that, while MATHEWS rushed towards Door 2 while the flight was in the air and leaned his body against the cabin door, he did not actually attempt to open the door, thus contradicting some of the information I had received in the second FAA notification. Nevertheless, they consistently described MATHEWS as extremely erratic and potentially dangerous.

17. The lead flight attendant stated that she spoke with the captain about the need to divert the flight based on fear for the safety of passengers and crew. She stated that they believed MATHEWS would not comply with the orders of the flight crew and they feared another incident would occur in the approximately six hours left in the air before the flight arrived in Tokyo. Although the plane had already passed by Anchorage on the way to Tokyo, the captain turned the plane around and diverted to land at the Ted Stevens Anchorage International Airport. The plane landed at approximately 5:20 p.m.

18. As of this writing, MATHEWS has been officially admitted to Providence Medical Center in Anchorage.

## CONCLUSION

19. Based on the foregoing, I submit that there is probable cause to believe that HARRY MATHEWS assaulted or intimidated a flight crew member or flight attendant, interfered with the performance of the duties of the member or attendant or lessened the ability of the member or attendant to perform those duties, or attempted or conspired to do such an act,

while onboard an aircraft in the special aircraft jurisdiction of the United States, in violation of 49 U.S.C. § 46504 (Interference with Flight Crew Members and Attendants); that he committed an act that if committed in the special maritime and territorial jurisdiction of the United States would violate section 113 of Title 18 while onboard an aircraft in the special aircraft jurisdiction of the United States, in violation of 49 U.S.C. § 46506(1) (Application of Certain Criminal Laws to Acts on Aircraft); and that he committed a simple assault within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 113(a)(5) (Simple Assault within Maritime and Territorial Jurisdiction).

RESPECTFULLY SUBMITTED,

Katie Yarborough
Special Agent
FBI

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 on January 18, 2026.

THE HON. SCOTT A. ORAVEC
U.S. Magistrate Judge
DISTRICT OF ALASKA